May it please the court. Counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office and I represent Mr. Henry on this appeal. He raises five issues but there have been concessions by the government so given the government's concessions on issues three and four and its position on five I'm going to devote myself largely to the issues one and two but before I do so with regard to issue three I wish to acknowledge contrary authority with the district court's 3553a findings and whether they are adequate to support the five-year period of supervised release. What I wish to bring to this court's attention is armor and armor decided that by making 3553a determinations in the context of the sentence that necessarily satisfies the relevant considerations for 3583c but of course to accept that reading in armor is to make 3583c ornamental as I heard a member of this panel once addressed the government in an oral argument in the West versus Arona Barra about the effect of reading a separate statutory provision out of the statute book and how Congress doesn't tend to do those things and that would be the case here 3583c addresses the necessity of supervised release and the reasons that need to be stated for imposing it and of course it is discretionary here up to release. He did address 3553a factors with respect to the length of sentence but you cannot import those factors and those determinations when they are in separate context to say that it therefore satisfies the separate determinations that are necessary for deciding whether or not supervised release is warranted in any regard. So while 3583c requires, there have to be separate determinations made under the statute for the two different things the length of supervised release that's what I'm saying. And the government argues that because this is a drug case that the ceiling on supervised release is in fact life not five years. You made the argument that it was five years. If I have misstated that your honor the fact remains the determinations still have to be made to correctly impose supervised release and that would be so. The district court didn't do that. Turning then to issues one and two and I'll take them in reverse order. Criminal history is at issue here because the district court judge assessed criminal history points for the aggravated unlawful use of a weapon convictions and he had two of those. And the government thinks that there's nothing in this record to suggest that those three offenses the two aggravated unlawful use of a weapon plus the felony criminal damage weren't just concurrent sentences of three years and in that case even if we were to agree with you that the AUW claims go out there's still the criminal damage claim and it doesn't change the calculation. Right that was government's position but the records less than clear on that. You read a PSR and the PSR lumps three different counts of conviction in there. My client has said since the case was since sentence was imposed that he believes it was pled down to a misdemeanor. He didn't have a reason. There's no record of that at all right. That's right because he didn't have a cause to fight that it wouldn't have made any difference in this criminal history calculations because the AUW convictions were valid. Now if there's a remand for full resentencing wouldn't this issue be open? And that's what we asked for. I mean why wouldn't it be open if we if we agreed based on the government's concession that a full resentencing is. So that's that's a sauce for the goose sauce for the gander situation though so if you can supplement the record on your side then surely it would not be appropriate to limit the government to bringing in new evidence to although you've asked us to impose such a limitation. It would be a full resentencing under Thompson and so the government could supplement it as it wishes to and we need to supplement and if it turns out that the criminal history is correctly calculated that's fine but we shouldn't accept at this juncture that the criminal history is correctly calculated given the AUW  the other count of conviction and that would affect his guideline range. Right. As for the final issue then which is issue one it's our position that the two-level leadership enhancement was incorrectly imposed and the district court made very limited findings but the findings. I don't understand that. This was his this was his he was the leader wasn't he? Not certain that he was he recruited somebody. Yeah he recruits someone and someone helps him and he sets the price and you know splits it and so on so he's running things. Well all true he fronted but fronting isn't sufficient to impose the enhancement he set the price but he didn't command a larger share of the profits he didn't exercise control. But we don't know about that he brings poor foy this is poor foy we're talking about right? Yes. He brings poor foy in so that's one thing that's a fact he does front so that's a second fact he tells poor foy what the price is going to be that's a third fact and there's this split now I take your point that if it's a hundred dollar sale and you know $80 comes back to him we don't know what his cost of acquisition was but I don't know that that necessarily says that he's he's still not a manager he's kind of assuming the risk of the cost of who is determining what the what his accomplices wages that's a manager manager tells the you know subordinates what they what they get. I don't believe that he is he's establishing what the price will be he's not establishing what the share of profits is and that's what a manager would do a manager would command a greater share a manager with exercise control. But I thought he would keep $20 and return $80? We don't know from the record if that was a greater share of profit if he committed. But it's a fixed price that's the thing it's a it's a peace transaction as opposed to a you know it cost us this time you know $50 to obtain it so it's and I don't know you could imagine some real profit sharing agreement but this is just a flat price. If I tell you you're gonna charge $100 and you're going to keep $20 and give me $80 or keep $80 and give me $20 that's a managerial decision I am telling you what you get paid. And that would establish a greater share of the profits which would support the imposition of the enhancement. Well isn't that what happened here? No it wasn't that was never established what we have is basically as if I'll give an analogy I started $80 figures from. I thought it was established that the price was a hundred and that Henry gets 80 out of a hundred and Purifoy keeps the 20. That is true but I'm saying with respect to profit we don't know. Profit we don't know but just why does that matter? Because that is one of the signals of some greater culpability is if you're profiting off the work of somebody else you should be more accountable in the criminal context. Well of course you're profiting off the work of someone else. I'm not certain he is if $20 is the whole profit. But that's why you hire people. You hire people to work for you. It would be your honor if I were to start a law firm and recruit an associate or a partner and that person was co-equal with me in terms of profits and responsibilities and activities and so forth even though I was first in time it doesn't show that I exercise control over that individual that I recruited and so is the case here. There needs to be a greater development of the facts and with that if I can reserve the balance. You're saying the defendant couldn't have split, couldn't have changed the division of the spoils? I'm not certain if he could. In any event if there's no profit left over if it's a $20 profit he didn't profit more greatly and therefore wouldn't have that indicia of greater culpability. I don't understand it. If he gets $20 every time his sidekick sells this stuff, of course he's profiting from this other person's work. My point is I don't know if he's profiting more greatly. So your point as I understand it is Purifoy keeps $20, Henry gets the $80, but you think if Henry had paid $70 to get the heroin to begin with, he's netting only $10 out of the sale. He's letting Purifoy keep $20, he's netting $10. Maybe I'm all off, but that's what I thought you were arguing. That is one possibility, absolutely, but it could be a market share idea about obtaining control over the existing market and so it's not a lost leader but it's a break-even prospect perhaps. We just don't know from the facts and therefore we can't assess the position of the enhancer. All right, thank you. Mr. Peterson. May it please the court. As to the defendant's procedural argument, I would just point out that since the case is being, since we're agreeing that the needs to be remanded for a full resentencing, the other issues that the defendants raised as to the length of the supervised release term, the amount of fine, those issues can all be addressed by the district court. So what about this leader thing for once it's a full resentencing, if there are further facts to develop, is there any reason why they couldn't be developed on remand? There's no reason why they couldn't, however, there's no reason why those That's true of a lot of things. I mean, I gather the government might want to throw some additional fodder in too, right? Correct, if the issue was reopened then we could present additional evidence if necessary at the resentencing hearing. However, based on the record that the court has before it, there's more than enough evidence to conclude that the district court correctly determined that the leadership enhancement applied. The defendant exercised control over his co-defendant, Purifoy. He admitted in his plea agreement that he recruited Purifoy to sell heroin for him, not just to sell heroin, but to sell heroin for him. Do you think it's irrelevant whether Henry himself nets, as in my example, $10 out of the sale or $20 or $40 or anything else? Well, it's a factor for the court to consider, but all those factors that are set forth in the commentary, none of them are meant to be taken in isolation, or if that factor isn't present, then the defendant didn't exercise leadership. In this case, clearly the defendant exercised leadership over Purifoy. He's the one that told him how much to sell the heroin for. He directed what split was to be given and, you know, to argue... And this is just the two-level. Nobody says he's an organizer. He's really kind of at the manager level, right? He's at the intermediate level. Correct. It was a small conspiracy and Purifoy followed his direction as to how to package it, sell it. The defendant assumed all the risk. He provided the heroin to Purifoy to sell. If it was lost, then he wasn't going to get paid. Purifoy assumed no risk. He sold the heroin and got a share of the profit. So that's true anytime there's fronting, right? That's correct, but it's just another factor for the court to Is the manager adjustment is correct anytime you can discern relative culpability, or is there some additional substance that goes into the application of the manager adjustment? Do you have to be doing a certain number of things before you can be called a manager, even if, you know, there's hierarchy? Well, you have to exercise some control over the other person. So you think there is some substantive element that down in the peon level, you know, maybe some people are more important than others, but still not doing things that would justify calling them a manager. I think you have to look at all the factors in each case and then make the determination if there was, someone was exercising control over another person. I mean, you could have a co-worker and you could make a suggestion to that co-worker, well you should do this, and they follow it. Well, that doesn't mean that you're their supervisor. You have to look at whether there's multiple factors. So like the people who sweep the floor may be helpful, but the people who take the money to the bank are probably more important than the floor sweepers, but neither one of them is a manager. Correct, because they're not directing anyone else as to what to do or, you know, what price to sell the product for. And if there's no other questions as to the leadership and enhancement, I would just point out that we agree that the district court would be in the proper position at a full resentencing to correctly determine the criminal history points. And at that point, if the defendant, as opposed to at the original sentencing, objects to one of the criminal history point determinations, then additional information can be provided to the district court. So unless there's no other questions, we would just ask that the court remand the case for a full resentencing, but affirm the district court's decision as to the leadership enhancement. Okay, thank you very much. I think you have about a minute, Mr. McNeil. Anything else? All right, thanks to both the council. We'll take the case under advisement.